UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  06-21245 HOEVELER/BROWN

PATRICK WHEELER                        )
                                       )
              Plaintiff,               )
                                       )
       vs.                             )
                                       )
DePUY SPINE, INC.,                     )
                                       )
              Defendant.               )

**REPLY MEMORANDUM OF DEFENDANT DEPUY SPINE, INC.,
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

REPLY ARGUMENT ............................................................................................... 1

  I.  Plaintiff Does Not Dispute That 21 U.S.C. § 360k Preempts All Claims
That The Charite Disc Is Defective Under State-Law Standards. ..................... 1

  II.  Plaintiff's Purported "Parallel Claims" Fail For State-Law Reasons:  Florida
Law Does Not Recognize Any Such Claims. ..................................................... 2

  III. Plaintiff's Purported "Parallel Claims" Also Fail Under Federal Law. ............... 4

     **A.**  Plaintiff's "Issue Preclusion" Contention Is Frivolous. ............................ 4

     **B.**  Plaintiff's Purported "Parallel Claims" Based On Alleged Non-Disclosure
To The FDA Fail Under Conflict Preemption Principles And The
Supreme Court's *Buckman* Decision. ...................................................... 6

     **C.**  The Charité Disc PMA Did Not Impose The Performance Requirements
That Plaintiff Claims. ............................................................................. 10

     **D.**  Plaintiff Has Not Created A Genuine Issue That Device Components Were
Not Manufactured In Compliance With FDA-Approved Specifications. ........ 13

     **E.**  Off-Label Use Of A Device By A Surgeon Is Not A Violation Of Federal
Law And Does Not Impose Liability On A Manufacturer. ......................... 16

  IV. Plaintiff's Express Warranty Claim Fails Due To Lack Of Privity. .................... 18

CONCLUSION ....................................................................................................... 20

## INTRODUCTION

The Motion for Summary Judgment filed by defendant DePuy Spine, Inc. raises several independent grounds for summary judgment on all claims alleged by plaintiff Patrick Wheeler. The response filed by Mr. Wheeler does not contest some of the grounds argued by DePuy Spine, and his arguments as to the other grounds are meritless.

## REPLY ARGUMENT

**I.      Plaintiff Does Not Dispute That 21 U.S.C. § 360k Preempts All Claims That The Charite Disc Is Defective Under State-Law Standards.**

As set forth in DePuy Spine's Memorandum in support of its Motion for Summary Judgment ("DePuy Mem."), the Supreme Court's decision in *Riegel v. Medtronic, Inc.*, 533 U.S. ___, 128 S. Ct. 999 (2008), makes clear that 21 U.S.C. § 360k, the express preemption provision of the Medical Device Amendments to the Food, Drug and Cosmetic Act (FDCA), preempts all state-law claims contending that a medical device receiving premarket approval (PMA) from the U.S. Food & Drug Administration (FDA) is defective under state-law standards. *See* 128 S. Ct. at 1006-08. Regardless of the type of state law claim (whether for strict liability, negligence, breach of implied warranty, or otherwise), and regardless of the nature of the claimed defect (whether in the device's design, manufacture, warnings, or otherwise), Mr. Wheeler may not pursue claims contending that the Charité Artificial Disc should have any device characteristics relating to safety or effectiveness other than those approved by the FDA in its PMA order. *Id.*; *see* DePuy Mem. 2-4. Plaintiff's Memorandum opposing summary judgment ("Pl. Mem.") nowhere disputes this.

Under 21 U.S.C. § 360k, the only type of state law claim not expressly preempted as to a PMA device, a so-called "parallel" claim, is one that provides a state law remedy for a violation of a federal requirement pertaining to the device. *Riegel*, 128 S. Ct. at 1011 ("§ 360k does not

prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations"). That is not to say, however, that any type of state-law claim for any violation of any FDA regulation is permissible. *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001) ("although *Medtronic*[, *Inc. v. Lohr*, 518 U.S. 470 (1996)] can be read to allow certain state-law causes of action that parallel federal safety requirements, it does not and cannot stand for the proposition that any violation of the FDCA will support a state-law claim"). In particular, even where a given state-law claim is not expressly preempted by 21 U.S.C. § 360k, the state claim nevertheless is still preempted under conflict preemption principles where it conflicts with the intended operation of the federal statute. *Buckman.* 531 U.S. at 348, 350-51.

**II.    Plaintiff's Purported "Parallel Claims" Fail For State-Law Reasons:  Florida Law Does Not Recognize Any Such Claims.**

As DePuy showed in moving for summary judgment, Florida law provides a negligence claim based on violation of a statute or regulation (typically called a "negligence *per se*" claim) only if the legislature intended to create a private remedy. Since Congress expressly provided that the FDCA does *not* allow a private remedy, Florida law does not provide a private remedy for a violation of the FDCA or of FDA regulations thereunder, as has been held in several cases. DePuy Mem. 5-6.

Mr. Wheeler does not dispute either of these points or cite any contrary authority. Instead, he responds with a word game that tries to evade either federal preemption law under the FDCA, Florida law governing private remedies for statutory violations, or both. Specifically, Mr. Wheeler says his complaint does not allege a "negligence per se" claim, but rather a "traditional negligence theory" which "does not simply assert that DePuy violated a statute," but instead alleges, "independent of" any violation of FDA requirements and regulations, that DePuy "also . . . adopted a defective design" and "failed to exercise due care in manufacturing and

selling a defective device"). Pl. Mem. 27-28. Even if this were an accurate characterization of the claims asserted, it would not protect Mr. Wheeler's tort claims from summary judgment. Either those claims are based on alleged FDCA violations, in which case Florida law provides no remedy, or they are not, in which case they are preempted.

To the extent Mr. Wheeler asserts any state-law tort claims which *do not* rely on federal statutory or regulatory violations, such claims are precisely what 21 U.S.C. § 360k preempts. Again, that statute prohibits States from imposing on a medical device granted premarket approval *any* requirement pertaining to safety or effectiveness different from or in addition to those required by the PMA and the FDA's order granting it. *Riegel*, 128 S. Ct. at 1006-08; DePuy Mem. 2-3. A "parallel" state-law claim, the *only* state-law cause of action not precluded by §360k, is one that provides a state-law remedy for a violation of an applicable *federal* requirement. *Riegel*, 128 S. Ct. at 1011; DePuy Mem. 4; *see also* Pl. Mem. 12. As a matter of federal statute and U.S. Supreme Court precedent, therefore, Mr. Wheeler *cannot have* any valid tort claim under Florida law that – in his words – "places no reliance on a statutory violation," or that alleges "defective design" or "fail[ure] to exercise due care" in a manner "independent of" a violation of "FDA requirements, standards, [or] regulations." Pl. Mem. 28.

Stated another way, Florida law does not give Mr. Wheeler the only tort cause of action it might permissibly give him under the federal statute – *i.e.*, a state-law claim providing a private remedy for violating a federal design, manufacturing or labeling requirement applicable to the medical device under the PMA and FDA order granting it. Florida law does not give him that cause of action because the Florida rule is that no negligence *per se* claim (or a claim under any other label) may be based on violation of a statute which was not intended by the enacting legislature to create private remedies. It is incontrovertible that Congress expressly excluded

3

private remedies under the FDCA.  21 U.S.C. § 337; *Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1285 n.10 (11th Cir. 2002).  Therefore, regardless of pleading labels:

> Under Florida law, whether there is civil liability for violation of a statute depends on legislative intent.  *See Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985-86 (Fla. 1994).  In the absence of evidence "of a legislative intent to create a private cause of action," violation of a statute creates no civil liability.

*Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp.2d 1353, 1361 (M.D. Fla. 1997) (holding that this Florida rule in combination with 21 U.S.C. § 337 precludes a claim under Florida law for violation of FDA regulations under the FDCA); *see also* DePuy Mem. 6 (citing many additional Florida law cases).[1]  Accordingly, all of Mr. Wheeler's purported "parallel" claims fail for this state-law reason independent of whether any violations of the FDCA occurred.

## III.    Plaintiff's Purported "Parallel Claims" Also Fail Under Federal Law.

### A.    Plaintiff's "Issue Preclusion" Contention Is Frivolous.

Based on the Massachusetts trial court's decision denying summary judgment in *Brown v. DePuy Spine, Inc.*, 22 Mass. L. Rep. 425, 2007 WL 1089337 (Mass. Super. Ct. April 9, 2007), Mr. Wheeler contends "DePuy is barred by the doctrine of issue preclusion from relitigating whether [his] state law claims are preempted."  Pl. Mem. 15-16.  This contention is frivolous.

The effect a federal court gives a prior state court decision is governed by 28 U.S.C. § 1738 (often called the "Full Faith and Credit Act").[2]  Under that federal statute, "if state courts

---

[1]  Florida is not unusual in precluding a negligence claim for violation of a state or federal statute not intended to allow a private remedy.  *See, e.g., Vanderwerf v. Smithkline Beecham Corp.*, 414 F. Supp.2d 1023, 1023-28 (D. Kan. 2006).  Indeed, in cases involving alleged violation of the FDCA, this analysis and result is apparently the majority rule.  *See id.* at 1028 n.2 (collecting cases); *Hackett v. G.D. Searle & Co.*, 246 F. Supp.2d 591, 594 (W.D. Tex. 2002).

[2]  Mr. Wheeler's citation and reliance on *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), and *Syverson v. IBM*, 472 F. 3d 1072 (9th Cir. 2007), are incorrect.  These cases deal with res judicata effects of *federal* court judgments in later federal court proceedings.  The
*(Footnote Continued To Next Page)*

would not give preclusive effect to the prior judgment, 'the courts of the United States can accord it no greater efficiency' . . . ." *Haring v. Prosise*, 462 U.S. 306, 314 n.6 (1983) (*quoting Union Planters' Bank v. Memphis*, 189 U.S. 71, 75 (1903)); 18B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4469 at 92-94 & nn. 32, 35 (2002).

Massachusetts courts would not give preclusive effect to the *Brown* decision. Under Massachusetts law, "[b]efore precluding a party from relitigating an issue, 'a court must determine that (1) there *was a final judgment on the merits* in the prior adjudication . . . .'" *Anusavice v. Bd. of Regis. in Den.*, 889 N.E.2d 953, 963 (Mass. 2008) (emphasis added) (*quoting Kobrin v. Bd. of Regis. in Med.*, 832 N.E.2d 628 (Mass. 2005)); *accord, e.g., Commonwealth v. Purdy*, 562 N.E.2d 1347, 1351 (Mass. 1990) ("Because there was no . . . final judgment, Purdy's invocation of res judicata and collateral estoppel are without merit"). The trial court's decision denying summary judgment in *Brown* is clearly not a "final judgment" under Massachusetts law. Mass. R. Civ. P. 54(a).

In sum, because there has been no "final judgment" in the *Brown* cases, the interlocutory decision cited by Mr. Wheeler has no issue preclusive effect under Massachusetts law. Because it has no preclusive effect under Massachusetts law, a federal court may not give it preclusive effect under 28 U.S.C. § 1738.

---

*(Footnote Continued From Previous Page)*
preclusion effect of state court decisions is controlled by 28 U.S.C. §1738 and precedent under that statute.

Furthermore, by its own terms the *Brown* opinion did not purport to actually decide the issues upon which Mr. Wheeler claims preclusion. Instead, the Massachusetts court expressly deferred making a decision on the merits until a more complete record was before it.[3]

As explained below, the interpretations of federal law by the Massachusetts trial court were incorrect. Further, the complete and specific record before this Court eliminates any genuine issue of fact material to DePuy Spine's entitlement to judgment on Mr. Wheeler's claims. The Court should proceed to enter summary judgment as required by federal law and rules of procedure independent of the state court's prior interlocutory order.

**B.      Plaintiff's Purported "Parallel Claims" Based On Alleged Non-Disclosure To The FDA Fail Under Conflict Preemption Principles And The Supreme Court's *Buckman* Decision.**

As DePuy Spine predicted in moving for summary judgment, many of Mr. Wheeler's "parallel claims" are actually based not on the design, manufacturing or labeling requirements applicable to the Charite Disc under the FDA's order and PMA, but rather on alleged non-disclosure and misrepresentation to the FDA. *See* Pl. Mem. 8-9, 14, 18-21. If a state were to recognize a claim based on such conduct, however, the dispositive preemption issue would not be whether it is a "parallel claim" which may escape express preemption under 21 U.S.C. § 360k and *Riegel*. Instead, such a claim is barred by implied conflict preemption principles and the Supreme Court's decision in *Buckman*, 531 U.S. 341. DePuy Mem. 7-11.

------

[3] As to whether claims of misrepresentation to FDA were preempted by *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), the *Brown* court said: "Where an underlying question of law is subject to doubt, the preferable practice is to decide the question on a full record of facts." 2007 WL 1089337 at *13. As to whether the Charité Disc PMA included plaintiffs' alleged "performance requirements," the court said: "Given the apparent absence of cases in which a plaintiff has sought to recover for negligent failure of a manufacturer to comply with performance requirements created as a part of the PMA process, it is appropriate that the record be developed so that the theory being advanced by the plaintiffs may be explored in light of actual facts rather than a pleader's suppositions." *Id.* at *15.

Mr. Wheeler says DePuy Spine's reliance on *Buckman* "is recycling an argument it lost in *Brown*." Pl. Mem. 26. In addition to the facts that the *Brown* opinion has no preclusive effect and was tentative by its own terms, as explained above, the *Brown* opinion is incorrect. The *Brown* court did not have available the numerous recent decisions holding that *Buckman* preemption applies to any state-law claim based, in whole or in part, on allegations of non-disclosure or misrepresentation to the FDA, regardless of whether the claim's state-law label is "fraud on the FDA," negligence *per se*, or anything else. *See* DePuy Mem. 9-10. There are now even more decisions so holding. *Link v. Zimmer Holdings, Inc.*, 2008 WL 5047677 at *5 (N.D. Ill. Nov. 26, 2008) (rejecting, based on *Buckman*, contention that non-disclosure to FDA would avoid preemption under *Riegel*); *Clark v. Medtronic, Inc.*, 572 F. Supp.2d 1090, 1095 (D. Minn. 2008) (citing *Buckman*: "Congress has granted the FDA exclusive power to enforce MDA premarket approvals. ... Consequently, plaintiff would not be able to raise this claim even if it were supported by the facts.").

In contrast to the foregoing authorities, the cases cited by the *Brown* court either pre-dated *Buckman* or are off-point for other reasons. The case most heavily relied upon by the *Brown* court is distinguishable in that it involved a recalled device, where the FDA had itself acted to remove the device from the market. *In re Medtronic, Inc. Implantable Defibrillators Lit.*, 465 F. Supp.2d 886, 890 (D. Minn. 2006). Furthermore, in a case which did not involve a recalled product, the author of the *In re Medtronic* opinion has recently made clear that a state-law claim based on alleged non-disclosure to the FDA *is* preempted under *Buckman*. *Clark*, 572 F. Supp.2d at 1095 (Rosenbaum, J.).

Mr. Wheeler also says that "[b]ecause [his] products liability claims are distinguishable from claims based on . . . an FDA disclosure requirement, *Buckman* does not apply." Pl. Mem.

27.  This assertion is a transparent mischaracterization.  Mr. Wheeler's claims for alleged non-disclosure and misrepresentation to the FDA plainly *are* "based on . . . [alleged] violation of . . . FDA disclosure requirement[s]."  *See* Pl. Mem. 14, 18-21.  Any such disclosure obligations could only arise from federal law; there is no state law duty to say anything to the FDA.  Further, any claim not based on a violation of federal law would be expressly preempted under *Riegel*.

Mr. Wheeler also invokes the *Brown* court's distinction that "'[t]he plaintiffs in Buckman did not claim the device itself was defective.'"  Pl. Mem. 26 & n.123 (quoting *Brown*, 2007 Mass. Super. LEXIS 114, at *39).  This supposed "distinction" has nothing to do with the *conflicts* identified by the Court in *Buckman* between a state-law claim and the operation of the FDCA.  Indeed, the most notable aspect of both Mr. Wheeler's argument and the *Brown* court's analysis of the *Buckman* issue is that neither addresses the conflicts identified in *Buckman*; yet those conflicts are the *reason* for finding conflict preemption.  See DePuy Mem. 8-10.  Congress has charged the FDA with determining what information it needs to make PMA decisions and with policing compliance with its own rules and information requirements.  Any second-guessing what the FDA would do or substitution of different standards by courts inevitably interferes with the FDA's performance of its statutory duties, no matter what state-law label is applied or what other elements are involved in a state law claim.

The "distinction" argued by Mr. Wheeler has found no acceptance in federal courts.  All of the numerous federal appellate decisions finding preemption as to allegations of fraud on the FDA *did* involve allegations of product defect under state law.  *See, e.g., Mitchell v. Collagen Corp.*, 126 F.3d 902, 914 (7th Cir. 1997); *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1320-21, 1328-29 (3d Cir. 1995); *Reeves v. Acromed Corp.*, 44 F.3d 300, 301, 306-07 (5th Cir. 1995).  This is also true of post-*Buckman* decisions holding both express and "disguised" fraud-on-the-FDA

8

claims preempted. *See, e.g., Cupek v. Medtronic, Inc.*, 405 F.3d 421, 422, 424 (6th Cir. 2005); *Mason v. Smithklein Beecham Corp.*, 546 F. Supp.2d 618, 619, 627 n.5 (C.D. Ill. 2008); *Link*, 2008 WL 5047677 at *5; *McCutcheon v. Zimmer Holdings, Inc.*, 2008 WL 3153442 at *5 (N.D. Ill. Aug. 6, 2008).

Mr. Wheeler also contends that alleged violation by DePuy Spine of *post*-approval FDA reporting requirements automatically invalidates the PMA and thereby "remove[s] any basis for preemption." Pl. Mem. 20; *see id.* at 20-21. Contrary to this contention, under the controlling statutory provision, a PMA may be withdrawn for post-approval reporting violations only if, "after due notice and opportunity for informal hearing," the FDA "finds" that the manufacturer "has repeatedly or deliberately failed to . . . make [required] reports . . . ." 21 U.S.C. § 360e(e)(1) & subpart (D)(i). A PMA-withdrawal determination by a court or jury based on a sponsor's post-approval reporting, whether in the guise of deciding a state-law claim or otherwise, would directly conflict with the express terms of this federal statute and would usurp a decision exclusively reserved to the FDA.[4]

---

[4] The sentence in the FDA's PMA order Mr. Wheeler quotes – "Failure to comply with the conditions of approval invalidates this approval order." – must be understood as a short-hand reference to this FDA authority under 21 U.S.C. § 360e(e)(1) to withdraw a PMA, not the creation of some non-statutory PMA cancellation process which can be accomplished by a court or jury.

Contrary to Mr. Wheeler's implication (Pl. Mem. 20 & n.97), neither *Gomez v. St. Jude Med. DAIG Div., Inc.*, 442 F.3d 919 (5th Cir. 2006), nor *Martin v. Medtronic, Inc.*, 254 F.3d 573 (5th Cir. 2001), dealt with allegations of violation of post-approval conditions. Rather, the point addressed in both cases was that "state law-based actions claiming that a defendant *failed to build a medical device in compliance with PMA-approved design specifications*" are not preempted. *Gomez*, 442 F.3d at 930 n.2 (emphasis added); *see also Martin*, 254 F.3d at 582 n.8. This, of course, is the classic "parallel" claim permitted under *Riegel* and § 360k; it is not based on alleged violation of requirements to disclose or report information to the FDA. The other case Mr. Wheeler cites – *Woods v. Gliatech, Inc.*, 218 F. Supp.2d 802 (W.D. Va. 2002) – does state in dicta that post-approval violation of information disclosure requirements "invalidated the FDA's approval." *Id.* at 807 n.4. There, however, the manufacturer had been *criminally*

*(Footnote Continued To Next Page)*

**C.     The Charité Disc PMA Did Not Impose The Performance Requirements That Plaintiff Claims.**

As anticipated, Mr. Wheeler has asserted that the PMA for the Charité Disc imposed federal requirements that the disc would perform in certain ways in every patient after implantation. These so-called "performance requirements"[5] are supposedly derived from listings of user needs considered as design inputs and certain functions analyzed for failure modes in two of DePuy Spine's design control documents.

In its initial brief, DePuy Spine rebutted the assertion that the PMA imposed requirements on the post-implant performance of Charité Discs in patients, and also rebutted the imposition of the specific "performance requirements" claimed by Mr. Wheeler in particular.[6]

---

*(Footnote Continued From Previous Page)*

*convicted* of the disclosure violation; *see id.*, and presumably therefore the FDA had withdrawn the PMA pursuant to § 360e(e)(1). The court in *Woods* does not discuss how any supposed "automatic" PMA withdrawal for reporting violations could be reconciled with that federal statute, and cites no authority for such a supposed result. (The actual holding in *Woods* – that a PMA does not have the effect of preempting state law tort claims – is directly overruled by the Supreme Court's decision in *Riegel*).

[5]     Mr. Wheeler's counsel has changed terminology and started calling these alleged requirements "performance specifications." This is merely another word game intended to mislead. The specifications for the Charité Disc are contained in the device description section of the PMA application, governed by 21 C.F.R. §814.20(b)(3)(ii); (b)(4)(i-iv). These are principally the dimensional drawings for the disc components. Christianson Decl. Exs. A, L. The design control documents relied upon by Mr. Wheeler were in the manufacturing information section, a separate section, governed by 21 C.F.R. §814.20(b)(4)(v). Mr. Wheeler cannot turn manufacturing information into device specifications by mislabeling.

[6]     Mr. Wheeler argues that DePuy Spine should be barred by judicial estoppel from arguing the facts and law which preclude a finding that the FDA imposed "performance requirements" derived from design control documents. This argument is totally bogus. First, as a matter of law, judicial estoppel could not apply. The two Eleventh Circuit cases cited by Mr. Wheeler both require as an element of judicial estoppel, among other things, that "the allegedly inconsistent positions were made under oath in a prior proceeding." *Burnes v. Pemco Aeroplex, Inc.*, 291 F. 3d 1282, 1285 (11th Cir. 2002); *Barger v. City of Cartersville*, 348 F. 3d 1289, 1293 (11th Cir. 2003). None of the legal arguments claimed to create judicial estoppel here were under oath, so the doctrine cannot apply. *See Pendlebury v. Starbucks Coffee Co.*, 2008 WL 763213 at *3 (S.D. Fla. Mar. 12, 2008). Second, the prior arguments of DePuy Spine's counsel
*(Footnote Continued To Next Page)*

Among the multiple independent grounds cited by DePuy Spine were two purely legal grounds: (1) the statutory and regulatory procedures which must be followed to impose performance standards in a PMA, 21 U.S.C. §360d; 21 C.F.R. §§814.20(b)(5); 861.1(b)(3), were not followed as to the supposed "performance requirements"; and (2) the FDCA expressly prohibits use of design control documents in the evaluation of a device's safety and effectiveness, 21 U.S.C. 360j (f)(1)(A), and the FDA has disclaimed such use. DePuy Mem. 13-14, 16-17. With respect to the first ground, Mr. Wheeler offers no response at all. With respect to the second ground, since Mr. Wheeler does not dispute that the documents he relies upon were design control documents, the prohibition on use clearly applies. Mr. Wheeler cannot evade the statute by the nonsensical argument that imposition of performance requirements on a device has nothing to do with an evaluation of its safety and effectiveness. Each of these legal grounds is independently dispositive on Mr. Wheeler's "performance requirements" claim.

Two additional grounds for summary judgment were based on the undisputable record of the FDA's decision on the Charité Disc PMA: (3) the alleged "performance requirements" appear nowhere in the PMA approval order, the FDA's Statement of Safety and Effectiveness Data (SSED) (the official explanation of the basis for its approval), or anywhere else in the documents prepared by ODE review personnel or delivered to the FDA's outside advisory panel;

_(Footnote Continued From Previous Page)_
in Massachusetts relied upon by Mr. Wheeler are completely consistent with the positions being taken in this Court. DePuy Spine is not saying in this Court that its design control documents did not have any role in the PMA approval or that performance standards cannot be imposed in a PMA. It is saying (1) that the design control documents were submitted for a particular purpose in the PMA process (satisfaction of the Quality Systems Regulation) not related to the ultimate clinical performance of the Charité Disc in patients and (2) that the performance standards incorporated into the Charité Disc PMA did not include the particular design document line items asserted by Mr. Wheeler. Nothing argued in the _Brown_ case is inconsistent with what DePuy Spine is arguing in this Court.

and (4) the clinical study experience described in the SSED and the warnings required by the FDA to be put in the Charité Disc labeling prove that the FDA neither required nor expected that the claimed "performance requirements" would be satisfied in all patients.

Mr. Wheeler makes no response to the fourth ground.  As to the third ground, Mr. Wheeler's only response is to offer affidavits of two supposed experts, Dr. Suzanne Parisian and Phillip White, who give their opinions that the user needs and device functions listed as considerations in the design control documents nonetheless became binding legal requirements imposed by the FDA, even though the FDA never said so in any document.

DePuy Spine has filed a separate objection and a motion to strike as to the Parisian Affidavits and the White Affidavit.  In summary, DePuy Spine objects on grounds that (1) requirements which arise from a PMA are a matter of law, not a subject for expert testimony, and (2) in any event, Dr. Parisian and Mr. White have no qualifications or basis for the opinions offered.  Even if these affidavits were found admissible as to some factual matter, however, the legal principles and undisputed FDA record cited above make any opinions of these affiants immaterial to the decision of whether the Charité Disc PMA imposed the "performance requirements" asserted by Mr. Wheeler.

As context for addressing these allegations, the Court should recognize that imposition of binding legal requirements as to the ultimate performance of an implantable medical device in each patient would be an extremely unlikely and illogical regulatory action, and Mr. Wheeler cites no precedent for it.  No device maker could reasonably be expected or compelled to assure that a device will achieve a favorable outcome in every patient, on penalty of committing a per se violation of federal law.  In the few cases where a plaintiff has made a similar assertion, the courts have rejected the concept that the FDA requires that a PMA device perform a certain way

in each patient. *E.g.*, *Hughes v. Cook*, 452 F. Supp. Ed 872, 841-42 (W.D. Tenn. 2006) ("Plaintiff's argument … , that the S670D balloon was required to always function, *i.e.*, always deflate, fails to account for the 'potential unreasonable risk of illness or injury' that accompanies this medical device and suspect procedure. . . . [T]he FDA, under PMA Supplemental approval, did not specifically require that the S670D balloon always function . . . ."); *Clark v. Medtronic, Inc.*, 572 F. Supp. 2d 1090, 1094 (D. Minn. 2008) ("[P]laintiff alleges that his device did not perform as expected; . . . The Court assumes this to be true, but the assumption does not save his claim. . . . Plaintiff is ultimately wrong when he assumes that premarket approval guarantees the device is completely safe.")

In sum, for multiple reasons, the "performance requirements" asserted by Mr. Wheeler were not and could not be requirements imposed by the FDA as a part of the Charité Disc PMA.

**D.    Plaintiff Has Not Created A Genuine Issue That Device Components Were Not Manufactured In Compliance With FDA-Approved Specifications.**

Proof of a defect in manufacture under Florida law requires a showing that the product at issue "differs either from the manufacturer's intended result or from other units of the same product line." *Cassisi v. Maytag Co.*, 396 So.2d 440, 1146 (Fla. App. 1 Dist. 1981); *accord Bentez v. Synthes, Inc.*, 199 F. Supp. 2d 1339, 1344 (M.D. Fla. 2002)

The fact that the Charité Disc received a PMA adds to Mr. Wheeler's burden of proof with respect to negligent manufacture in this case:  the variation in his particular discs from the intended design must be shown to be a departure from the specifications which were approved by FDA.  If a particular specification or characteristic was not a part of the device description approved by the FDA, then a state law requirement that the device be manufactured in conformity would be "in addition to" the federal requirements imposed in the PMA, which is

prohibited by 21 U.S.C. §360k and therefore preempted. *See Kemp v. Medtronic, Inc.*, 231 F.3d 216, 230-32 (6th Cir. 2000), ("Because the specific federal requirements [in the PMA] applicable to the Model 4004M contain no thickness requirement, a jury verdict in plaintiffs' favor on plaintiffs' negligence per se claims would amount to a state requirement 'different from, or in addition to,' the federal requirements.")

DePuy has produced to Mr. Wheeler's counsel its Device History Records (DHRs) for the lots of device components which included the components in the devices implanted in him. These records contain the results of inspections conducted to confirm compliance of the components with specifications. As stated in the Declaration of Robin DiNardo, the DHR records confirm that the components in Mr. Wheeler's devices were in conformity with the specifications provided to FDA prior to the issuance of the PMA.

Several courts have granted summary judgment on negligent manufacture claims as to PMA-approved medical devices based on a similar record when there was a failure by the plaintiff to offer proof that the device, as delivered, failed to conform to specifications approved in a PMA. *E.g., Rousseau v. DePuy Orthopaedics, Inc.*, 2006 WL 3716061 at *10 (W.D. La. Dec. 13, 2006) (affidavit of defendant's quality control manager, that records showed no manufacturing deviation, was not contradicted by any admissible evidence); *Riegel v. Medtronic, Inc.*, 2003 WL 25556778 at *5-7 (N.D.N.Y. Dec. 2, 2003), *aff'd* 451 F. 2d 104 (2d Cir. 2006) (same). [7]

In the present case, Mr. Wheeler has not provided evidence of any defect in manufacture that existed in his Charité Discs at the time they left DePuy's possession. Instead, Mr. Wheeler

---

[7]   The summary judgment as to negligent manufacture was not challenged in the certiorari petition to the Supreme Court. *Riegel*, 128 S. Ct. 999, 1006 n. 2 (2008).

attempts to invoke the so-called "*Cassisi* inference" to substitute for his failure to produce any evidence that his Charité Discs were manufactured out of conformity with specifications.  In *Cassisi v. Maytag Co.*, 396 So. 2d 1140 (Fla. App. 1 Dist. 1981), the court held that under Florida law a plaintiff is generally entitled to an inference of defect upon proof that a product malfunctioned during normal operation.

Mr. Wheeler's argument is meritless.  Even if the *Cassisi* inference were applied, [8] at most it would give rise to an inference that some sort of product defect existed, but not the specific -- and only -- type of manufacturing defect which could avoid preemption:  a departure from the manufacturing specifications which were approved by the FDA in the Charité Disc PMA.  Other courts have rejected similar arguments that a malfunction of a medical device is evidence of non-compliance with PMA specifications. *E.g., Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 438 (E.D. Pa. 2004) ("Davenport and his expert cannot simply point to the malfunction itself to prove that the Leads were not manufactured in accordance with FDA/PMA specifications."); *Enlow v. St. Jude Medical, Inc.*, 327 F. Supp. 2d 738, 742-43 (W.D. Ky. 2003) ("Enlow makes an unwarranted leap of faith from the malfunction of the valve, characterized by him as a 'defect,' to the conclusion that St. Jude failed to adhere to FDA requirements for manufacturing, testing, or inspection.").  Besides the logical disconnect between a product malfunction and an inference that manufacturer departed from certain manufacturing specifications, allowance of such an inference would permit wholesale evasion of federal

---

[8]   The Affidavit of Charles Rosen, M.D., submitted by Mr. Wheeler, does not provide evidence sufficient to prove a malfunction within the meaning of *Cassisi*.  The affidavit does not describe any breakage or disassembly of the Charité Disc components.  It does not describe any departure from design in the functioning of the components with each other.  It merely describes symptoms Dr. Rosen attributes to the operation of the disc in Mr. Wheeler's particular anatomy.  The Court, however, does not have to decide this issue since no inference of departure from FDA-approved specifications can be drawn from a malfunction in any event.

preemption. If liability for manufacturing defect could be found without identification and proof of a non-preempted departure from FDA-approved specifications, different state law requirements would displace or be added to federal law requirements in violation of 21 U.S.C. §360k. *See Kemp*, 231 F.3d at 230-32.

In sum, there is no genuine issue that Mr. Wheeler's discs were manufactured in compliance with FDA-approved specifications.

**E.      Off-Label Use Of A Device By A Surgeon Is Not A Violation Of Federal Law And Does Not Impose Liability On A Manufacturer.**

Mr. Wheeler's opposition brief notes that Dr. Garcia implanted Charité Discs at two disc levels in his spine even though the device was approved by the FDA and labeled for implantation at only one level. He asserts, without any citation of regulations or case law, that such implantation constituted a violation of federal law. This assertion is plainly incorrect. Dr. Garcia's implantation of two discs does not constitute a violation of federal law, either for the surgeon or for DePuy Spine.

As a matter of law, a decision to prescribe and implant Charité Discs at two levels is within the province of the implanting surgeon and his own professional judgment. Such "off-label" use is legal and sometimes necessary, in the professional judgment of the surgeon, for the treatment of medical conditions like degenerative disc disease. The FDCA expressly states that nothing the FDA does under its statutory authority "shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship." 21 U.S.C. § 396. As stated by the Supreme Court:

.

> "[O]ff-label" usage of medical devices (use of a device for some other purpose than that for which it has been approved by the FDA) is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine. ... [T]he FDA is charged with the difficult task of regulating the marketing and distribution of medical devices without intruding upon decisions statutorily committed to the discretion of health care professionals.

*Buckman*, 531 U.S. at 350.  Courts around the country concur.  "'Off-label' use is both legal and widespread." *Hill v. Danek Medical, Inc.,* 1998 WL 1048182 at *7 (E.D. N.C. Sept. 10, 1998); *see also McCarthy v. Danek Medical, Inc.*, 65 F. Supp.2d 410, 414 (E.D. La. 1999).

Federal district courts have granted summary judgments rejecting claims which attempted to impose liability on device manufacturers based on a doctor's off-label use of a medical device. *E.g., Little v. DePuy Motech, Inc.*, 2000 WL 1519962, at *9 (S.D. Cal. June 13, 2000) ("Dr. McKinley's decision to use [the manufacturer's] device in an 'off-label' manner does not subject the manufacturer to liability, even if it knows of the off-label use."); *Cox v. DePuy Motech, Inc.*, 2000 WL 1160486, at *8-9 (S.D. Cal. Mar. 29, 2000) ("A physician may use any device legally on the market in any way the physician deems appropriate which may be consistent with the seller's labeling or 'off-label,' as in this case.  A seller is not liable even if it knows of off-label use."); *accord, Davenport v. Medtronic, Inc.*, 302 F. Supp.2d 419, 439-40 (E.D. Pa. 2004).

Once a doctor has made a professional judgment as to the best treatment of a patient, DePuy Spine has no right or obligation under FDA regulations or under the Charité Disc PMA to interfere with that treatment because it may be off-label.  To the contrary, interference by DePuy Spine with the doctor's practice of medicine would be a violation of the policy expressly stated by Congress in the FDCA, 21 U.S.C. §396, quoted above.  Nor may a state impose liability on a medical device seller on this basis.  To do so would impose requirements different from and in addition to the federal requirements, contrary to § 360k's express exemption provision.

**IV.    Plaintiff's Express Warranty Claim Fails Due To Lack Of Privity.**

Mr. Wheeler has alleged a claim based on the theory of express warranty.[9]  There is no factual dispute, however, that DePuy Spine sold the Charité Disc components at issue to Aventura Community Hospital, not to Mr. Wheeler.  Aventura Hospital billed Mr. Wheeler for the disc components, and Mr. Wheeler (or his insurer) paid Aventura Hospital for the components, not DePuy Spine.  Mr. Wheeler was not in privity with DePuy Spine.

In its opening brief, DePuy Spine cited numerous recent state and federal court decisions, each reciting and applying the rule of Florida law that a plaintiff cannot assert a claim based on express warranty if the plaintiff was not in privity with the defendant.  Many of these cases granted summary judgment to sellers of drugs and medical devices, as requested by DePuy Spine here.  DePuy Mem. 19-20.

Mr. Wheeler's response is to argue that all the cases cited by DePuy Spine are wrong and that Florida law does not really require privity for express warranty liability, citing three opinions from the 1980s.  These three opinions do not say what Mr. Wheeler asserts and are readily distinguishable.  In *Monsanto Agricultural Products Co. v. Edenfield*, 426 So. 2d 574 (Fla. App. 1 Dist. 1982), the court's only reference to privity was a passing citation of a case involving a pre-U.C.C. sale, when privity had not been required.  *Id.* at 576.  The *Edenfield* case dealt with effectiveness of limitations of express warranty, and the need for privity was not addressed.  In *Cedars of Lebanon Hospital Corp. v. European X-Ray Distributors, Inc.*, 444 So.

---

[9]    Mr. Wheeler's affidavit clarifies that he is not relying on any document delivered to him which described itself as a "warranty."  Instead, he is attempting to create an express warranty from a product slogan ("Natural motion is back.") which could not reasonably have been understood, especially in its context, to be "an affirmation of fact or promise" so as to constitute an express warranty under Fla. Stat. §672.313.  The Court does not need to rule on whether §672.313 is satisfied by Wheeler's affidavit, however, because the Florida privity rule precludes warranty liability as a matter of law.

2d 1068 (Fla. App. 3 Dist. 1984), the court found that the sale was in reality between the manufacturer and hospital even though structured as a sale through a distributor, so privity existed:

> We wish to emphasize that we are focusing on the direct contacts between the manufacturer and the ultimate purchaser/consumer in finding that privity exists in this case. *Had there been no direct contact between the two parties, appellee's contention that there was no privity, and thus no liability for breach of warranties, would be correct.*

*Id.* at 1072 n. 4 (emphasis added). Finally, in *In re Bob Rigby, Inc.*, 62 B.R. 900 (Bankr. M.D. Fla. 1986), the court found no breach of warranty by the product manufacturer. As in *Cedars of Lebanon*, agents of the manufacturer had met with the purchaser and negotiated the purchaser's agreement to purchase the product through a distributor. The court cited *Edenfield* and two other cases which did not address privity, then concluded in dicta without further explanation that "Fla. Stat. §672.313 does not limit express warranty to the actual seller in spite of the fact that a literal reading of the Section might so indicate ...." *Id.* at 906. There is no allegation or evidence that representatives of DePuy Spine ever met with Mr. Wheeler to induce his agreement to purchase a Charité Disc. Thus, none of the cases cited by Mr. Wheeler is a precedent for departing from the privity requirement on the facts here.

Mr. Wheeler also cites Fla. Stat. §672.313, which is the U.C.C. section recognizing creation of express warranties from statements "made by the seller to the buyer." This statute does not support Mr. Wheeler's argument. To the contrary, it indicates that only a direct buyer receives a seller's warranty. Another U.C.C. section limits the persons who are beneficiaries of such warranties: Fla. Stat. §672.318, which states that "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his or her buyer, who is a guest in his or her home, or is an employee, servant, or agent of his or her buyer ...." Mr.

19

Wheeler does not fit within any of these categories, and therefore he is not a recipient or a beneficiary of any express warranty created under Fla. Stat. §672.313. Thus, Florida statutes are consistent with the case law requiring privity.

The consistent view of all courts, state and federal, which have addressed the issue is that Florida law requires privity before an express warranty claim may be asserted. The Court should follow the line of precedent cited by DePuy Spine to grant summary judgment on Mr. Wheeler's express warranty claim.

## CONCLUSION

For the reasons stated above, DePuy Spine is entitled to summary judgment on all claims alleged by Mr. Wheeler.

/s/ NEVILLE M. LESLIE
Jeffrey B. Shapiro
Fla. Bar No. 484113
Neville M. Leslie
Fla. Bar No. 0107492
Arnstein & Lehr LLP
Attorneys for Defendant
Suite 3600, 200 S. Biscayne Blvd.
Miami, Florida 33131
Telephone:    (305) 374-3330
Facsimile:    (305) 374-4744
E-Mail:       jbshapiro@arnstein.com

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _31st_ day of December, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ NEVILLE M. LESLIE
Jeffrey B. Shapiro
Fla. Bar No. 484113
Neville M. Leslie
Fla. Bar No. 0107492
Arnstein & Lehr LLP
Attorneys for Defendant
Suite 3600, 200 S. Biscayne Blvd.
Miami, Florida 33131
Telephone:     (305) 374-3330
Facsimile:     (305) 374-4744
E-Mail:        jbshapiro@arnstein.com

21

Service List

PATRICK WHEELER V. DePUY SPINE, INC

CASE NO . 06-CIV-21245 HOEVELER/BROWN

UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA

Howard M. Bushman, Esq.
Lance Harke, P.A.
HARKE & CLASBY LLP
155 South Miami Avenue, Suite 600
Miami, Florida  33130
Telephone:  (305) 536-8220
Facsimile:  (305) 536-8229
(Via CM/ECF)

Thomas M. Sobol, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142
Telephone:  (617) 482-3700
Facsimile:  (617)  482-3003
(Via Regular Mail)

Peter Flowers, Esq.
FOOTE, MEYERS, MIELKE AND
FLOWERS LLC
416 South Second Street
Geneva, Illinois  60134
Telephone:  (630) 232-6333
(Via Regular Mail)